607 So.2d 904 (1992)
STATE of Louisiana, Appellee,
v.
Thomas Wayne DAILEY, Appellant.
No. 24221-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*905 Samuel Thomas, Tallulah, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, James D. Caldwell, Dist. Atty., Vicki Baker, Asst. Dist. Atty., Tallulah, for appellee.
Before LINDSAY, VICTORY and STEWART, JJ.
LINDSAY, Judge.
The defendant, Thomas Wayne Dailey, appeals his conviction for second degree murder on the grounds that no psychiatrists were appointed to his sanity commission that his confession was not made freely and voluntarily. For the reasons expressed, we affirm the defendant's conviction and sentence.

FACTS
The evidence, which is not controverted on appeal, reveals that on September 21, 1990, the victim, Angel Alonzo, went to an establishment in Tallulah, Louisiana called the Capri, also known as JoAnn's Lounge. The victim ate a meal and had some drinks. The victim reportedly flashed some cash around in the establishment and remarked that he had plenty of money.
The defendant had gone to the lounge with James Ricky Brewer to find a female friend, Sean Davidson Villedrouin, who occasionally worked there. The defendant and Brewer wanted Ms. Villedrouin to leave with them.
While at the lounge, the defendant, Brewer and Villedrouin talked with the victim about going to Delhi to "party." However, the victim declined. He left alone *906 and went to another nearby drinking establishment.
The defendant, Brewer and Villedrouin followed shortly thereafter and noticed the victim's vehicle at the establishment. The defendant and his companions stopped and again made contact with the victim. The four then left together, traveling toward Delhi in a truck driven by Ricky Brewer and owned by Brewer's cousin.
The group made a couple of stops by the roadway to relieve themselves. On the second stop, the defendant attacked the victim and beat him into unconsciousness with his fists and with a crow bar. The defendant loaded the victim into the back of the truck and the group drove away with the defendant giving directions that they drive to Joe's Bayou to dispose of the body.
As they traveled toward the Bayou, the victim began to revive. The defendant went into the bed of the pickup truck and again beat the victim about the head.
Prior to disposing of the body in Joe's Bayou, the defendant took approximately $300 from the victim's wallet. After disposing of the body in the waters of the Bayou, the trio went to a car wash in Tallulah and washed the blood out of the back of the truck and off the crow bar. The group then went to Brewer's girlfriend's house where the defendant washed up and changed out of his bloody clothing. The defendant put his clothing and a cap belonging to the victim in a plastic bag, cut holes in the bag so that it would sink, and threw the bag into the Mississippi River.
The victim's body was discovered by a fisherman early the next morning. An autopsy revealed that the victim died from brain damage caused by massive head injuries.
Ricky Brewer's cousin, David Brewer, the owner of the truck, became suspicious and made an anonymous call to the police. Casts of the truck tires were made and were matched to tire tracks found at Joe's Bayou where the body was discovered. Blood samples were taken from the truck and were determined to be human blood.
Subsequently, Ricky Brewer and Sean Villedrouin gave statements confessing their part in the offense. The defendant was questioned about the offense shortly after it occurred. However, he was not arrested until October 5, 1990. This arrest occurred in another parish and was based on unrelated charges.
The investigation of the present offense continued and ultimately, on October 10, 1990, the defendant gave a statement to law enforcement officials in which he admitted killing the victim.
Thereafter, the defendant was charged by grand jury indictment with first degree murder and armed robbery. However, the charge was reduced to second degree murder prior to trial.
The defendant entered a plea of not guilty and not guilty by reason of insanity. A sanity commission was appointed pursuant to a motion by the defendant. The sanity commission found the defendant was sane at the time of the commission of the offense and had the capacity to proceed to trial.
The defendant was tried by jury on November 18-25, 1991. He was found guilty as charged of second degree murder.
The defendant appealed his conviction. On appeal, he complains of the composition of his sanity commission and contends that the trial court erred in failing to suppress his confession because it was allegedly made under duress, while the defendant was depressed, on drugs and suffering from a mental disorder.

SANITY COMMISSION
The defendant contends that the trial court erred in failing to appoint psychiatrists to his sanity commission. The defendant argues that he was entitled to a complete psychological examination by doctors qualified in psychiatry notwithstanding his indigent status.
In the trial court, the defendant filed a motion for the appointment of a sanity commission to conduct a hearing "in conformity with C.Cr.P. Arts. 644-647." LSA-C.Cr.P. Art. 644(A) provides:

*907 Within seven days after a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least two and not more than three physicians who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who are qualified by training or experience in forensic evaluations. No more than one member of the commission shall be the coroner or any one of his deputies. The court may appoint, in lieu of one physician, a psychologist who is licensed to practice psychology in Louisiana who has been engaged in the practice of clinical or counseling psychology for not less than three consecutive years immediately preceding the appointment, and who is qualified by training or experience in forensic evaluations.
The selection of physicians to serve on a sanity commission rests within the sound discretion of the trial judge. State v. Vince, 305 So.2d 916 (La.1974). There is no requirement in LSA-C.Cr.P. Art. 644 that the doctors appointed to a sanity commission be psychiatrists. State v. Taylor, 347 So.2d 172 (La.1977); State v. Stuart, 344 So.2d 1006 (La.1977). The comments to this article indicate that although there is no requirement that the doctors appointed to the sanity commission be psychiatrists, "It is contemplated that Louisiana courts will continue the practice of appointing a psychiatrist or psychiatrists when available...."
In State v. Crochet, 354 So.2d 1288 (La.1977), the Louisiana Supreme Court stated that while there is no requirement that the doctors appointed to a sanity commission be psychiatrists, the refusal to appoint an available psychiatrist to a sanity commission could constitute an abuse of discretion. However, in the absence of a showing that such a specialist was available for appointment, there is no error.
In this case, on the form provided by the defendant, the trial court appointed a sanity commission consisting of Dr. Jacob Storey, a local general practitioner who is also a physician at the Tallulah Mental Health Center, and Dr. T.A. Neuman, also a local general practitioner and the parish coroner, who, by virtue of his duties as coroner, necessarily deals with mental health cases. The defendant did not request the appointment of a psychiatrist to his sanity commission. Nor did he object to the absence of a psychiatrist from the commission until after the conclusion of the sanity hearing.
Further, the defendant made no showing in the trial court that psychiatrists were available for routine appointment in rural Madison Parish. The record reveals, however, that the defendant was examined at the mental health center in Tallulah by a psychiatrist, Dr. Gary Booker, who was apparently a visiting psychiatrist to the center. There is no showing that Dr. Booker, or any other psychiatrist, was readily available for appointment to sanity commissions by the trial court.
At any rate, the defendant was examined by Dr. Booker and his formal written evaluation was provided to the members of the sanity commission and was filed in the record at the time of the sanity hearing. The members of the sanity commission based their evaluation, in part, on the report of Dr. Booker. Dr. Booker was presumably subject to subpoena for testimony at the sanity hearing had the defendant thought his testimony would be helpful. The defendant did not subpoena Dr. Booker. In light of these circumstances, we find that an adequate examination was made of the defendant and that he has suffered no prejudice.
Further, we note that the defendant contends that the sanity commission failed to review his prior mental history. This claim is unfounded. The transcript of the sanity hearing shows that the defendant's prior records from the Tallulah Mental Health Center were reviewed and the testimony of Dr. Storey shows that he considered these records in making his evaluation of the defendant.
*908 We also find meritless the defendant's contention that the sanity commission should have conducted drug screening. At the sanity hearing it was pointed out that no drug screening was conducted at the time of the defendant's evaluation because the evaluation was conducted several months after the commission of the offense. However, defendant's drug and alcohol use was considered by the commission in light of the defendant's own statements to the doctors that he was under the influence of alcohol and crack cocaine at the time of the commission of the offense.
This assignment of error has no merit.

MOTION TO SUPPRESS
The defendant contends that the trial court erred in failing to sustain his motion to suppress a confession made while the defendant "was under duress, depressed, on drugs and suffering from a mental disorder." This argument is meritless.
LSA-R.S. 15:451 provides:
Before what purposes [purports] to be a confession can be introduced into evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
LSA-C.Cr.P. Art. 703 sets forth the procedure by which a defendant may file a motion to suppress evidence. LSA-C.Cr.P. Art. 703(D) provides:
On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant, to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
Where the accused is in custody, a prerequisite to the admission of a confession is the advising of the accused of his constitutional rights and his intelligent waiver of those rights. It must also be affirmatively shown that the confession was freely and voluntarily given. LSA-R.S. 15:451; State v. Benoit, 440 So.2d 129 (La.1983).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980); State v. Benoit, supra. State v. Counterman, 515 So.2d 533 (La.App. 1st Cir.1987).
Whether a showing has been made that the confession was free and voluntary is analyzed on a case by case basis with regard to the facts and circumstances of each case. State v. Benoit, supra.
Whether intoxication, including drug use, exists and whether it is of a degree sufficient to vitiate the voluntariness of a confession are questions of fact. State v. Benoit, supra. When the free and voluntary nature of a confession is challenged on the ground of mental incompetence due to intoxication by alcohol or drugs, the confession is inadmissible only when the intoxication is of such a degree as to negate the defendant's comprehension and render him unconscious of the consequences of what he is saying. The court's conclusions on this factual issue will not be disturbed unless unsupported by the evidence. State v. Meredith, 400 So.2d 580 (La.1981); State v. King, 573 So.2d 604 (La.App. 2d Cir.1991); State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), writ denied 475 So.2d 778 (La.1985).
LSA-C.Cr.P. Art. 703(G) governs the use of a confession at trial after a decision on a motion to suppress that is adverse to the defendant. That article provides:
G. When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of a confession or statement for the purpose of enabling the jury to determine the *909 weight to be given the confession or statement.
A ruling made adversely to the defendant prior to trial on a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
The defendant was arrested on other charges in a neighboring parish on October 5, 1990. On October 10, 1990, after consulting with counsel, the defendant, who had been incarcerated since his arrest, gave a videotaped statement to law enforcement officials in which he admitted killing the victim by striking him repeatedly with a crow bar. Prior to trial, the defendant filed a motion to suppress his statement in accordance with LSA-C.Cr.P. Art. 703, arguing that the statement was not made freely and voluntarily but was made under the influence of fear, duress, intimidation, menaces, threats, inducements and promises and without having been advised of his right to remain silent and his right to counsel. Disposition of the motion was referred to the trial on the merits.
At the trial, out of the presence of the jury, a hearing was held on the defendant's motion to suppress. It was determined that the defendant was fully advised of his constitutional rights and he freely and voluntarily chose to give a statement to Deputies Sammie Byrd and John E. Baker, Jr., of the Madison Parish Sheriff's Department. A transcript of the defendant's statement shows that the defendant was informed of his rights per Miranda and voluntarily signed a waiver of those rights prior to giving his statement. The defendant stated he understood his rights and freely and voluntarily chose to waive those rights. At the suppression hearing, Deputy Byrd and Deputy Baker testified that the defendant did not appear to be under the influence of drugs or alcohol at the time the statement was given. The transcript of the defendant's statement also shows that the defendant consulted with counsel prior to giving his statement and that after speaking with his lawyer, the defendant wished to give a statement. The trial court ruled that the statement was admissible and denied the defendant's motion to suppress. The defendant made a general objection to the court's ruling.
Although the defendant stated in his assignment of error that his statement was not given voluntarily due to depression, duress, drug use and a mental disorder, the only ground argued in brief is that the defendant was under the influence of drugs and alcohol prior to his confession. Therefore, we consider any arguments regarding depression, duress, or mental disorder to be abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989).
The defendant states in his brief that he was "arrested and while in jail and prior to his confession, Deputy Sheriff John Baker found in his possession two syringes with needles." The defendant contends that this fact shows that his drug abuse continued following his arrest and that he was under the influence of drugs when he gave his confession.
The statement made by the defendant in brief is contradicted by the record. The needles and syringes were not discovered prior to the defendant's confession, but were found some two months later, in December, 1990.
Further, there is no showing that the defendant was in actual possession of the needles and syringes while in jail following his arrest and prior to giving his statement on October 10, 1990, nor is there any showing that the needles or syringes contained traces of controlled dangerous substances. Also, Deputy Baker testified that at the time the defendant gave his confession, no needle marks were observed on the defendant's arms. The defendant's argument that he was under the influence of drugs at the time he gave his confession is not supported by the record.
*910 The deputies who took the defendant's statement testified at the motion to suppress and at trial, in the presence of the jury, that the defendant did not appear to be under the influence of drugs or alcohol and that he gave his statement freely and voluntarily. Nothing in the record supports the defendant's argument that the statement was not given freely and voluntarily or that he was under the influence of drugs or alcohol at the time the statement was given. In addition, we have reviewed the defendant's videotaped confession and perceive nothing about the defendant's demeanor which would indicate the defendant's confession was not free and voluntary. Therefore, the trial court did not err in allowing the statement to be admitted at trial.
We also note that, at trial, in the presence of the jury, the prosecution complied with LSA-C.Cr.P. Art. 703(G) by presenting the testimony of the two officers who were present during the defendant's confession. This testimony was essentially the same as that given at the suppression hearing. Accordingly, a proper foundation was laid at trial for the introduction of the defendant's confession.
Based upon our review of the record, we find that the trial court did not err in allowing the defendant's confession to be admitted into evidence.

CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Thomas Wayne Dailey.
AFFIRMED.