655 So.2d 705 (1995)
STATE of Louisiana
v.
Ricky Lynn McBROOM.
No. 27027-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*706 Indigent Defender Board by James M. Wilkerson, Monroe, for appellant.
Robert Levy, Dist. Atty., Shawn Alford, Asst. Dist. Atty., Farmerville, for appellee.
Before MARVIN, NORRIS and STEWART, JJ.
NORRIS, Judge.
A grand jury indicted the defendant, Ricky Lynn McBroom, on three counts of aggravated rape of his 10-year-old stepdaughter, "S.S.," in violation of R.S. 14:42. After trial, a jury unanimously found him guilty as charged. The district court imposed the mandatory sentence of life in prison at hard labor without benefit of parole, probation or suspension of sentence on each count, to run consecutively. McBroom appeals his conviction, assigning eight errors and advancing three arguments. For the reasons expressed, we affirm.

Factual and procedural background
In November 1991, the then-10-year-old S.S. and her mother reported to the Union Parish Sheriff Office that S.S.'s stepfather, McBroom, had molested S.S. on numerous occasions over roughly a two-year period. During a subsequent medical examination, S.S. told Dr. Meade O'Boyle, the attending physician, that McBroom had penetrated her *707 vaginally and anally, and had engaged her in oral intercourse.
McBroom was arrested, waived his Miranda rights, and gave a videotaped statement on December 6, 1991. In this he confessed to having had oral, vaginal and anal sex with S.S. on several occasions. A grand jury indicted him on three counts of aggravated rape on March 2, 1992. A sanity commission was appointed later that month to determine McBroom's mental state at the time of the offense and his capacity to proceed; all three doctors found him able to discern right from wrong and competent to assist counsel in his defense. On October 7, pursuant to a plea bargain, he pled to two counts of simple rape. The district court sentenced him to 25 years at hard labor on each count, to run consecutively.
McBroom appealed his sentence and conviction to this court, urging that the district court did not abide by the plea bargain. We reversed the conviction and set aside the plea on grounds that his counsel at the time misrepresented the terms of the bargain. State v. McBroom, 25,781 (La.App.2d Cir. 2/23/94), 632 So.2d 916. We also ordered the appointment of new counsel and remanded the case for further proceedings. About a week before trial (and after a motion for continuance had been denied), McBroom's new counsel applied for a sanity commission to examine his capacity to proceed. After a hearing in which no evidence was introduced, the district court denied McBroom's application.
At trial the State's evidence consisted of three witnesses. First was Dep. Lisa Hutson, the detective who took the original complaint from S.S. and her mother, interviewed S.S. and carried her to Dr. O'Boyle. She was also present when McBroom gave his videotaped confession. The second witness was S.S.; by the time of trial she was 13 years old, and the court found her competent to testify. She testified explicitly that over the course of two or three years, McBroom had been placing his penis in her vagina or anus almost every other day, and that these incidents occurred either at their home or in McBroom's car. The final witness was Dr. O'Boyle, who verified that S.S.'s vaginal ring was not intact and the opening could easily be stretched large enough to admit an adult male penis. She concluded that S.S. had been sexually abused.
In addition to the live testimony, the State introduced the videotaped confession and played it for the jury. The State also introduced S.S.'s birth certificate, proving that at the time of the offense she was under the age of 12.[1] McBroom neither testified nor presented any evidence.
The jury returned a verdict of guilty as charged on all three counts. The district court imposed the mandatory sentence of life in prison at hard labor without benefit of parole, probation or suspension of sentence on each count, to run consecutively. As noted, McBroom designated eight assignments of error, but the five that were neither briefed nor argued are deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied 558 So.2d 1123 (1990).

Discussion: Appointment of second sanity commission
By his first assignment McBroom urges the district court erred in denying his request for the appointment of a sanity commission to evaluate his present capacity to proceed and understand the proceedings against him. As noted above, six days before trial defense counsel filed this application, alleging that McBroom had a "history of self-mutilation, including an attempt to puncture his eyes with a fork, and an attempt to burn his eyes out with a cigarette, and actually pulling his right eyeball out of its socket, for the reason that `Jesus said if your eye offends thee, then pluck it out'"; has been known to refuse to eat for periods up to three weeks; hears "silent voices" which compel him to do things against his wishes; believes he was possessed by demons at the time of the alleged offenses; is unable to "go *708 into the details of the alleged offenses and to assist counsel in his defense because `the Lord will deliver him from the trial'"; and believes that God will manifest himself through defense counsel "and an imminent miracle will deliver him from persecution by Satan."
The following day the district court held a hearing on the application. The State objected on grounds that a sanity commission had previously convened and concluded that McBroom fully understood the charges against him and was capable of assisting in his defense. In fact, the trial court had declared on July 22, 1992 that he was competent to stand trial.
At the hearing, defense counsel stated that all the allegations in his motion had occurred since the appointment of the original sanity commission. The court stated that if an inmate had gouged his eye out while housed at the Correctional Center, there would be a record of it; however, defense counsel offered no documentation. The court also stated that if such an incident had occurred after the guilty plea that was ultimately set aside, it would "raise some question" with the court. The prosecutor, who was familiar with the case, conceded that two of the incidents alleged in the applicationpulling his eye out of its socket and going on a fasthad actually occurred, after the prior sanity commission made its evaluation but before McBroom entered his prior guilty plea. Defense counsel agreed that this was correct. R.p. 103. He offered no evidence or argument as to when the other alleged indicia of insanity were observed.
The district court found "no allegations of anything significant" that occurred after the guilty plea was entered in October 1992. The court cited its thorough Boykin examination as proof that McBroom has "the ability to understand the nature of the proceedings[.]" The court described his understanding as "an acute awareness of the nature of the proceedings" and criticized the instant motion as a ruse to promote further delay. R. pp. 103, 104. The court therefore denied the application on the showing made.
Louisiana law provides that the defendant's mental capacity to proceed may be raised at any time by the defense, the district attorney, or the court. La.C.Cr.P. art. 642. The trial judge shall order a mental examination of the defendant and appoint a sanity commission to do so when the judge has reasonable ground to doubt the defendant's mental capacity to proceed. La.C.Cr.P. arts. 643, 644.
The appointment of a sanity commission, however, is not a perfunctory matter or ministerial duty of the trial judge; it is not guaranteed to every accused in every case. State v. Nix, 327 So.2d 301 (La.1975), cert. denied 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976); State v. Lott, 574 So.2d 417 (La.App.2d Cir.), writ denied 580 So.2d 666 (1991). The mere fact that a defendant's capacity to proceed is called into question by formal motion does not, for that reason alone, require the trial judge to order a mental examination. La.C.Cr.P. art. 643; State v. Lott, supra; State v. Goins, 568 So.2d 231 (La.App. 3d Cir.1990), writ denied 573 So.2d 1117 (1991). Because of the presumption of sanity, before the trial judge is required to appoint a sanity commission, the defendant bears the burden of showing by a preponderance of the evidence that reasonable ground exists to doubt his mental capacity to proceed. State v. Bickham, 404 So.2d 929 (La. 1981); State v. Goins, supra. The judge's determination in this regard is entitled to great weight on appeal and will not be set aside absent a clear abuse of discretion. State v. Wilkerson, 403 So.2d 652 (La.1981).
At the instant hearing, McBroom presented no evidence at all to support the allegations in his application. It was the prosecutor who stated for the record that two of the alleged eventsself-mutilation and fastinghad actually occurred. Both defense counsel and the prosecutor agreed that these were before the guilty plea that this court reversed on other grounds. Defense counsel neither discussed nor supported the remaining claims by testimony or medical records; the district court stated that medical records likely existed. Finally, the application itself did not allege when any of the other events occurred. This evidence is not sufficient to prove reasonable ground *709 to doubt McBroom's capacity to proceed. It is certainly less than was offered in State v. Saddler, 549 So.2d 1236 (La.1989), cited by McBroom in brief. In fact, the instant showing is more akin to State v. Ellis, 555 So.2d 608 (La.App. 4th Cir.1989), which holds that a statement by counsel in which both the defendant and his mother described a history of mental problems was inadequate to show reasonable ground to doubt the defendant's capacity to proceed.
McBroom also questions the district court's reliance upon the prior Boykin examination (October 1992) as support for the ruling 18 months later. However, counsel conceded at the instant hearing that the alleged evidence of incapacity to proceed occurred before that guilty plea. A review of the transcript from the Boykin hearing shows that the district court was indeed very thorough in questioning McBroom. McBroom correctly answered questions about his educational background, and national and state political events; a review of these proceedings belies any claim that he is mentally incompetent to proceed.[2] The courts have held that in the absence of evidence to prove incapacity to proceed, the district court has the discretion to look to other proceedings, such as a Boykin-like interrogation of the accused, or the jury selection process, to help assess the defendant's mental state. State v. Carry, 459 So.2d 676 (La.App. 4th Cir.1984); State v. Guidry, 449 So.2d 41 (La.App. 1st Cir.1984). We perceive no error in the district court's actions here.
In short, McBroom failed to meet his burden of proving by a preponderance of the evidence that reasonable ground existed to doubt his mental capacity to proceed. While his application included strong allegations (two of which had admittedly occurred) that could certainly provoke questions as to his mental capacity, he offered no evidence for the court's consideration. The unsupported allegations, and the absence of expert evidence to show that the proven ones indicate mental disease, will not justify the appointment of a sanity commission. The court did not abuse its discretion. This assignment does not present reversible error.

Denial of special jury charge
By his seventh assignment McBroom urges the district court erred in overruling his objections to the jury charge which did not indicate that the State had to prove beyond a reasonable doubt that the offenses occurred within Union Parish and within Louisiana. After both sides had rested at trial, the court heard arguments regarding jury charges. Defense counsel stated that he had requested a special jury charge that the State must prove beyond a reasonable doubt that the offense occurred in Union Parish. The record does not include a copy of this request for special jury charge, but counsel objected to the district court's denial of his request. R.p. 320.
During argument on this matter, the prosecutor urged that under La.C.Cr.P. art. 615 defense counsel should have filed a motion to quash prior to trial, raising improper venue. The defense replied there was no indication of the venue issue until trial began; it arose, he contended, when Detective Hutson and S.S. testified about the location of McBroom's house. The district court disagreed on the basis of art. 615, ruled that the State had proved venue during the course of trial, and denied the requested special charge. McBroom now urges in brief that because proof of venue was required, he was entitled to the special jury charge. In support he cites State v. Powell, 598 So.2d 454 (La.App.2d Cir.), writ denied 605 So.2d 1089 (1992), in which we distinguished between a claim of improper venue (which must be raised by motion to quash) and a claim of no proof of venue (which may be raised by motion for directed verdict). McBroom contends that because Powell recognized lack of proof of venue as grounds for motion for directed verdict, then the State must prove venue.
Under Louisiana law, the State and the defendant have the right before argument *710 to submit to the court special written charges for the jury. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La.C.Cr.P. art. 807; State v. Nuccio, 454 So.2d 93 (La.1984). Since 1988 the law has also provided, with respect to the pleading of improper venue, that venue "shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial." La.C.Cr.P. art. 615; State v. Powell, supra.
McBroom's requested jury charge is obviously not wholly correct, in that the burden of proof of venue is a preponderance, not beyond a reasonable doubt, and the requested charge would require explanation in that it fails to state that venue is not an essential element that the State is required to prove. For these reasons the district court did not err in declining McBroom's requested special charge.
Moreover, while the analysis in Powell, supra, may have justified McBroom in moving for a directed verdict, the district court would have been within its discretion to deny the motion. Assuming (without so holding) that proof of venue of the incident in the car was lacking, we note that McBroom's videotaped statement admits "five or six" incidents inside the family's Spearsville house, which is unquestionably in Union Parish. The error, if any, was harmless. La. C.Cr.P. art. 921. At any rate, the court did not abuse its discretion in denying the requested charge. This assignment does not present reversible error.

Objection to court's jury charge
By his eighth assignment McBroom urges the district court erred in overruling his objection to the jury charge, which included the penalty for aggravated rape (mandatory life at hard labor without benefit) but not the penalties for the responsive verdicts. McBroom asserts that the court's inclusion of the aggravated rape penalty came without warning or notice; and argues that the failure to recite the lesser penalties amounted to an improper comment exhibiting a pro-conviction bias.
During the reading of the charge, McBroom objected; the court removed the jury, but the court reporter did not transcribe the arguments and ruling on the objection. R.p. 346. The State, however, concedes that the substance of the objection was a request to include the penalties for the responsive verdicts. We therefore will assume that the argument was properly preserved.
When the penalty imposed by the statute is mandatory, the trial court must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. State v. Jackson, 450 So.2d 621, 633 (La.1984), and citations therein. When the penalty is not mandatory and the trial court has discretion to impose sentence anywhere within statutory limits, the decision to instruct the jury on the authorized penalty is within the trial court's discretion. Id.; State v. Nuccio, supra.
In the instant case the court's general charge correctly stated that aggravated rape carries a mandatory sentence of life in prison at hard labor without benefit. As none of the responsive verdicts carry mandatory sentences, the court was within its discretion to omit these sentences from its charge.[3] Admittedly, the length of the possible sentences might be useful to jurors in appreciating and distinguishing the different *711 offenses. See, e.g., State v. Peddy, 569 So.2d 1035, 1037-1038 (La.App. 3d Cir.1990), and citations therein. If anything, the inclusion of the mandatory sentence for aggravated rape and the omission of the lesser sentences is a protection afforded the defendant; the jury might hesitate to find the defendant guilty as charged, knowing that this would fix an automatic life sentence. We do not see how the district court's refusal to list the sentences for the responsive crimes prejudiced McBroom or showed a pro-conviction bias. The charge completely and correctly explained the standard of reasonable doubt, the State's burden of proof, and the essential elements of each of the responsive verdicts. R.pp. 335-342. The record as a whole is devoid of any evidence of pro-conviction bias on the part of the trial judge.
This assignment does not present reversible error.

Conclusion
Finally, we have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2).
For the reasons expressed, Ricky Lynn McBroom's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] One of the circumstances that makes the offense aggravated rape is that the victim is under, the age of 12. R.S. 14:42A(4).
[2] In the previous appeal, we stated, "On its face, the Boykin colloquy is unassailable." 632 So.2d at 919. We set aside the plea only because prior counsel led McBroom to believe the maximum prison time he could receive was 25 years total.
[3] The possible verdicts were (1) guilty as charged, mandatory life at hard labor without benefit, R.S. 14:42; (2) attempted aggravated rape, imprisonment at hard labor for not more than 50 years, R.S. 14:42, 27 D(1); (3) forcible rape, imprisonment at hard labor for not more than 40 or less than five years, including at least two without benefit, R.S. 14:42.1; (4) attempted forcible rape, imprisonment at hard labor for not more than 20 years, R.S. 14:42.1, 27D(3); (5) sexual battery, imprisonment with or without hard labor for not more than 10 years, R.S. 14:43.1; (6) simple rape, imprisonment with or without hard labor for not more than 25 years, R.S. 14:43; (7) attempted simple rape, imprisonment with or without hard labor for not more than 12½ years, R.S. 14:43, 27 D(3); (8) not guilty. La.C.Cr.P. art. 814A(8).