740 So.2d 240 (1999)
STATE of Louisiana, Appellee,
v.
Brigham HENDERSON, Appellant.
No. 31,986-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*242 Daryl Gold, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Donald E. Hathaway, Jr., Catherine M. Estopinal, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, PEATROSS & DREW, JJ.
PEATROSS, J.
Defendant, Brigham Henderson, was convicted of manslaughter following a jury trial on a charge of first-degree murder and was sentenced to 18 years at hard labor. On appeal, Defendant claims that the trial court erred and, therefore, that his conviction should be reversed and a judgment of acquittal entered or, alternatively, that he be granted a new trial. For the reasons stated herein, Defendant's conviction is affirmed.

FACTS
On February 3, 1996, Defendant was involved, along with three of his friends, in a drug related shooting at a private residence in Shreveport. During the nighttime hours of February 2, 1996, into the morning hours of February 3, a series of events began that resulted in the death of Chris Messer and in serious injuries to Brooke Medlin and others located in a home at 3117 Cedar Creek in Shreveport. Flenard L. Autrey, Jr., an 18-year-old black male, Brad Mabry, Michael Roberts, David Atkinson and Chad Eizel, all white males who ranged in age from 17 to 20, went to the home at 3117 Cedar Creek to buy crystal methamphetamine. The house was the known residence of Stephanie Messer, and her brother Chris was there that evening. Autrey and Atkinson entered the house, where Autrey intended to buy the drugs. Chris Messer, however, refused to sell drugs to Autrey. During the course of his refusal, Chris Messer referred to Autrey as a "nigger." Autrey, upset by the incident, left the house with Mabry and drove to Michael Roberts' residence in Springlake Subdivision in Caddo Parish where Defendant was present. Thereafter, Autrey and Defendant drove to two separate residences to pick up shotguns, one of which was owned by Defendant. After they picked up the shotguns, Autrey drove back to the residence at 3117 Cedar Creek with Roberts, Mabry and Defendant. Roberts and Mabry stayed in the car, with Mabry now driving. Autrey and Defendant went behind the house, by the kitchen door, and began firing into the house. Chris Messer and Brooke Medlin, who were sitting at the kitchen table playing cards, were struck by the gunfire. After emptying their shotguns, Autrey and Defendant returned to the car, reloaded and again fired into the house. Chris Messer was fatally shot in his back. Brooke Medlin suffered a shattered femur and thumb, a chest injury and nerve damage. Other occupants of the house were also injured by the gunfire.
After his arrest, Defendant gave a post-Miranda statement confessing that he fired at least two shots into the residence. Both shooters, Defendant and Autrey, as well as Roberts and Mabry, were charged with first-degree murder. Roberts and Mabry entered into a plea agreement in exchange for their testimony. As previously stated, Defendant was tried and convicted of the responsive charge of manslaughter.
Defendant initially assigned 11 trial court errors; however, by failure to brief, Defendant has voluntarily abandoned 6 of *243 his assigned errors. State v. Thomas, 28,790 (La.App.2d Cir.10/30/96), 683 So.2d 1272; URCA Rule 2-12.4. We will address each of the remaining 5 errors in order of assignment.

DISCUSSION
Assignment of Error No. 4: Failure to produce grand jury testimony
On or about June 4, 1996, counsel for Defendant filed a Motion for Discovery of Information Necessary to a Fair Trial in which he requested that all witness statements be produced "including transcripts of grand jury proceedings." Defendant's motion stated that, "at a minimum," the trial court should review the grand jury transcript to determine if it contains any exculpatory evidence. Two participants in this crime, Michael Roberts and Brad Mabry, became State's witnesses after agreeing to a reduced charge in exchange for their testimony against Autrey and Defendant. Defendant asserts that the trial court erred by producing only four pages of Michael Roberts' grand jury testimony and by failing to produce any testimony of Brad Mabry. We disagree.
The trial began on March 31, 1997. In conjunction with the direct examination of Brad Mabry, counsel for Defendant brought to the trial court's attention, apparently by oral motion, the need for a review of the grand jury transcript to determine whether it contained exculpatory or impeachment evidence. The prosecutor emphasized to the trial court that there was no material inconsistency between the testimony of Mabry before the grand jury and on direct examination which had just been completed. The trial court and counsel for Defendant responded:
TRIAL COURT: Mr. Gold, I would say that I've had a chance now during the recess to read the transcript in question. And as you know, I even discussed two aspects with the District Attorney's office. Having considered that, the Court is of the opinion that there's nothing in the transcript that ought to be shared, there's nothing material, and that's the finding of the Court.
MR. GOLD: That's fine, Your Honor, I accept that. I mean there's no objection to that, I accept the Court's ruling.
Despite his counsel's statement, Defendant now claims that the trial court erred in not producing copies of the grand jury testimony of Brad Mabry. Based on the record before us, it is clear that counsel for Defendant waived any objection to the trial court's ruling; and, as such, it will not be considered in this appeal. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Brown, 552 So.2d 612 (La.App.2d Cir.1989), writ denied, 558 So.2d 581 (1990); La.C.Cr.P. art. 841.
In regard to the testimony of Michael Roberts, the trial court conducted an in-camera review of his grand jury testimony and produced four pages for review by the defense prior to cross-examination. In response to the court's ruling regarding the production, counsel for Defendant stated:
MR. GOLD: And if the record would reflect that those numbered pages that were announced by the Court are the only pages that I have been provided with.
Again, no specific objection was stated by counsel for Defendant to the limited production. Since it appears that Defendant's motion was orally made at trial (as opposed to relying upon the written motion filed some ten months earlier), it is questionable whether or not counsel properly preserved an objection to the limited production of Roberts' grand jury testimony. See La.C.Cr.P. art. 841. Even assuming, *244 however, that the issue is proper for appeal, we find that Defendant's assigned error is fatally flawed in other respects.
The meetings of the grand jury are entitled to the utmost secrecy. See La.C.Cr.P. art. 434. Such secrecy is to be violated only on a showing that without access to the grand jury testimony a defendant's case would be greatly prejudiced or that an injustice would be done. State v. Trosclair, 443 So.2d 1098, 1102-03 (La. 1983), cert. dism., 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). A defendant's need for the testimony must be shown "with particularity." Trosclair, supra. A general request for grand jury testimony will not satisfy the requirement of a demonstrated need, even when the alleged "need" is based upon a suspicion of perjury. Trosclair, supra. In Trosclair, the Supreme Court stated:
The court must balance the continuing need for secrecy and the particularized need for disclosure in arriving at its determination. The party seeking disclosure has the burden of proving that the need for disclosure outweighs the continuing need for secrecy. If disclosure is permitted, it must be closely confined to the limited portion of the material for which there is particularized need. In any event, disclosure is left to the sound discretion of the trial court and will not be reversed in the absence of an abuse of discretion. See Douglas Oil Company v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156, (1979).
A general claim such as that made by Trosclair that disclosure of grand jury transcripts would reveal exculpatory evidence or evidence of perjury is usually not sufficient to satisfy the requirement of a showing of particularized need. See United States v. Short, 671 F.2d 178 (6th Cir.1982).
Decisions of this court have closely followed Trosclair. See State v. Evans, 27,750 (La.App.2d Cir.2/28/96), 669 So.2d 719, writ denied, 96-0793 (La.6/28/96), 675 So.2d 1119; State v. Barker, 628 So.2d 168 (La.App. 2d Cir.1993), writ denied, 93-3194 (La.3/25/94), 635 So.2d 236.
Defendant's written motion, and presumably his counsel's oral request, were that the trial court conduct an in-camera inspection of the grand jury transcripts. That is exactly what the trial court did in this case; and, as a result, it disclosed pages of the transcript to the defense for impeachment purposes. We find that Defendant has failed to state a particularized need or factual basis that would justify the release of the entire grand jury testimony of Michael Roberts, or that calls into question the limited production of pages. Defendant has only made, like the defendants in Trosclair and Evans, a generalized claim or allegation of perjury. Furthermore, we can find no statement in the record as to how Defendant would be "greatly prejudiced" or would suffer an injustice by the trial court's failure to produce additional pages of the transcript. We find, therefore, that the trial court did not abuse its sound discretion in refusing to produce additional pages or the entire transcript of the grand jury testimony of Michael Roberts.
Assignment of Error No. 5: Error in admitting Defendant's statement
Defendant claims that the trial court erred in admitting his statement made to the police without a proper foundation being shown by the State. In support of this assigned error, Defendant points to a portion of the recorded statement and transcript thereof where Defendant's response is inaudible. Defendant claims that he did not wish to proceed with the interview, that he wanted to speak with his uncle and that he was under the influence of narcotics he received for treatment of his injuries. On these bases, Defendant asserts that his statement was given involuntarily. We find no merit to this assigned error.
The trial court conducted a free and voluntary hearing with Officer Skaggs testifying *245 regarding his post-arrest interview of Defendant. Officer Skaggs testified that he read Defendant his Miranda rights, that Defendant expressed an understanding of those rights and that Defendant waived those rights. Defendant also initialed and signed the standard Miranda rights card. Counsel for Defendant objected to the admission of the statement. The trial court overruled the objection finding that the State had shown that the statement was given freely and voluntarily.
The State bears the burden of proving beyond a reasonable doubt the free and voluntary nature of a confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Rogers, 476 So.2d 942 (La.App. 2d Cir.1985); La. R.S. 15:451. A trial court's findings following a free and voluntary hearing are entitled to great weight and will not be disturbed unless unsupported by the evidence. State v. Durr, 28,197 (La.App.2d Cir. 6/26/96) 677 So.2d 596; State v. English, 582 So.2d 1358 (La. App.2d Cir.1991), writ denied, 584 So.2d 1172 (1991). Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Pittman, 585 So.2d 591 (La.App. 5th Cir.1991), writ denied, 586 So.2d 545 (1991). Police testimony may overcome a defendant's claim that his statement was involuntary because he suffered from a wound or lack of sleep. State v. Billiot, 94-2419 (La.App. 1st Cir. 4/4/96), 672 So.2d 361, writ denied, 96-1149 (La. 10/11/96), 680 So.2d 655. See also State v. Gilmore, 332 So.2d 256 (La.1976). This court, in State v. Thomas, 28,790 (La. App.2d Cir. 10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La. 4/25/97), 692 So.2d 1081, stated:
The admissibility of a confession is a question for the trial judge, and his conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless not supported by the evidence. State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992).
See also State v. Brown, 30,782 (La.App.2d Cir.6/24/98), 715 So.2d 96; State v. Taylor, 30,310 (La.App.2d Cir.2/25/98), 709 So.2d 883.
The record in this case supports the trial court's finding that Defendant freely and voluntarily gave a statement to the police and that the prosecution met its burden under La. R.S. 15:451.
Assignment of Error No. 6: Improper cross-examination and failure to grant mistrial
Relying on the case of State v. Johnson, 389 So.2d 372 (La.1980), Defendant complains that the prosecution conducted an improper cross-examination of Defendant's character witness, Ronald Monsour. Specifically, Defendant claims that the scope of the examination was improper and that questions posed to the witness which were phrased "are you aware that ..." and which attributed certain statements to Defendant were objectionable. Defendant argues that the trial court was required to conduct a Johnson hearing regarding the subject matter of the questions with which he takes issue.
The trial court overruled Defendant's objection to the cross-examination and refused to entertain a side bar discussion or proposed motion. After the witness had been dismissed and the jury removed, counsel reiterated his objection and moved for a mistrial. The trial court denied Defendant's motion. After our review of the record, we do not believe that the trial judge abused his discretion in failing to conduct a Johnson hearing or in failing to sustain Defendant's objection or grant a mistrial.
As a preliminary matter, we note that the scope of the cross-examination of Monsour was proper. See La. C.E. art. 611(B); La. C.E. art. 405(A); State v. Sepulvado, 93-2692 (La. 4/8/96), 672 So.2d 158, rehearing denied, 5/10/96, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 *246 L.Ed.2d 227 (1996). Next, we find Defendant's reliance upon State v. Johnson, supra, misplaced. Johnson addressed cross-examination of a character witness regarding "convictions, arrests, or other misconduct" of the accused that may have occurred prior to the "present offense." By the very wording of the Johnson factors this is self-evident. In his brief, Defendant outlines the Johnson factors but fails to argue how they apply to the specific questions posed to the witness by the prosecution. In fact, the three questions at issue concerned matters set forth in Defendant's own statement, which was admitted into evidence without objection at the close of the State's case. Furthermore, the trial court's failure to conduct a Johnson hearing or to comply with its guidelines will not automatically result in reversible error. State v. Berryhill, 562 So.2d 1105 (La.App. 4th Cir.1990). Since the subject matter of the cross-examination did not concern prior crimes, acts or misconduct of the accused, a Johnson hearing was not required. As such, the trial court did not commit reversible error by allowing the prosecution to ask its questions without first conducting a Johnson hearing.[1]
Defendant incorrectly relies upon La. C.E. art. 608 as the evidentiary rule that controls the cross-examination of Defendant's witness. Significantly, Monsour testified before Defendant. In order for La. C.E. art. 608(C) to apply, Defendant's credibility as a witness must have already been put at issue so that it could have been "supported" by any general reputation testimony elicited from a subsequent witness. Since Defendant had not yet testified when Monsour provided the testimony about which Defendant now complains, Defendant's credibility as a witness could not be at issue. Furthermore, article 608 addresses a witness' character for truthfulness or untruthfulness. Monsour testified regarding Defendant's non-violent, peaceful manner, character and reputation; therefore, La. C.E. art. 404 is the controlling evidentiary rule.
We note that, arguably, under either rule, the prosecutor's question may have been improper in form. The prosecution admitted as much, but denied that the content of the questions was other than a reasonable construction of Defendant's statement. We agree. Furthermore, an incorrectly phrased question does not automatically require reversal absent a showing of prejudice. State v. Houghton, 619 So.2d 765 (La.App. 4th Cir.1993). The prosecutor's form of question, albeit incorrect, "was not so egregious as to taint the minds of the jurors." Houghton, supra. We agree with the State's assertion that the jury had just earlier that day heard the recorded statement of Defendant and that it "was well able to weigh the fairness of the question." There has been no showing that substantial rights of Defendant were prejudiced by the prosecutor's cross-examination which would warrant a reversal. Thus, even assuming error occurred in failing to sustain objection to the form of the questions posed by the prosecution, the error was harmless. La.C.Cr.P. art. 921.
Assignment of Error No. 10: Error in instructing the jury
Defendant claims that the jury should have been instructed regarding the maximum penalty for manslaughter. Defendant relies on a letter that six of the jurors signed asking the trial court for leniency in his sentencing. Defendant, however, cites no law for his argument that the penalty for a responsive verdict that has a sentencing ceiling, as opposed to *247 a mandatory penalty, must be explained to the jury in the trial court's instructions.
La. R.S. 14:31 B states:
Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim was killed as a result of receiving a battery and was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.
The responsive verdict of manslaughter for the particular crime committed by this defendant carries no minimum or mandatory penalty but a sentencing range from zero to forty (40) years to be imposed at the discretion of the trial judge. This court addressed this issue in State v. McBroom, 27,027 (La.App.2d Cir.5/10/95), 655 So.2d 705, wherein the defendant argued that the trial court erred in failing to instruct the jury regarding the penalties for responsive verdicts to the charge of aggravated rape. In McBroom, we noted that when a responsive verdict does not carry a mandatory penalty, it is within the trial court's discretion whether to instruct the jury on the authorized penalty. In holding that the defendant's assigned error lacked merit, this court stated:
In the instant case the court's general charge correctly states that aggravated rape carries a mandatory sentence of life in prison at hard labor without benefit. As none of the responsive verdicts carry mandatory sentences, the court was within its discretion to omit these sentences from its charge.
This court went on to state that the inclusion of the mandatory, harsher penalty and omission of the lesser penalty may actually favor a defendant during jury deliberations. In the case sub judice, Defendant was charged with first degree murder, but was convicted of the most lenient responsive verdict the jury could render, other than a finding of not guilty. We fail to see how the trial court's refusal to instruct the jury regarding the penalty for manslaughter prejudiced Defendant. La.C.Cr.P. 921. This assignment does not present reversible error.
Assignment of Error No. 11: Insufficiency of the evidence
As Defendant's final assigned error, he asserts that the evidence was insufficient to support his conviction. In support of this asserted error, Defendant argues that the testimony of his two accomplices, Michael Roberts and Brad Mabry, lacks credibility.
Although the record does not reflect that Defendant filed a motion for postverdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987). The jury weighs conflicting testimony *248 and assesses witness credibility. State v. Demery, 28,396 (La.App.2d Cir.8/21/96), 679 So.2d 518, writ denied, 96-2346 (La.2/7/97), 688 So.2d 497. "In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the jury, is sufficient for the requisite factual conclusion." Demery, supra, citing State v. Combs, 600 So.2d 751(La.App.2d Cir.), writ denied, 604 So.2d 973 (1992).
A review of the record, particularly the statement of Defendant in conjunction with the testimony of Roberts and Mabry, makes it clear that sufficient evidence was presented at trial for a rational trier of fact to conclude, beyond a reasonable doubt, that Defendant committed the crime of manslaughter. As the evidence supports the conviction, this assigned error is without merit.

CONCLUSION
For the reasons stated herein, Defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] Likewise, we find Defendant's reliance upon State v. Schmitt, 354 So.2d 1339 (La.1978), is also misplaced. The prosecutor began, but never finished, an improper question phrased as follows: "Q. Would that opinion change if you were aware. ...." Since this question was never completed and was withdrawn, apparently as the result of a side bar discussion, it cannot be at issue in this appeal.