777 So.2d 1286 (2001)
STATE of Louisiana, Appellee,
v.
Kenny OUZTS, Appellant.
No. 34,154-KA.
Court of Appeal of Louisiana, Second Circuit.
February 7, 2001.
Peggy J. Sullivan, Monroe, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Brian L. King, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
WILLIAMS, Judge.
The defendant, Kenny Ouzts, was charged by bill of information with two counts of armed robbery, violations of LSA-R.S. 14:64. After a jury trial, the *1287 defendant was found guilty as charged. He was subsequently adjudicated a third felony offender pursuant to LSA-R.S. 15:529.1. For the first count of armed robbery, the defendant was sentenced to serve life imprisonment without benefit of parole, probation or suspension of sentence. On the second count of armed robbery, the defendant was sentenced to serve fifty years hard labor without benefit of parole, probation or suspension of sentence. The trial court ordered the sentences to run concurrently. The defendant's motion for post-verdict judgment of acquittal was denied. For the following reasons, we affirm.

FACTS
On April 18, 1999, at approximately 2:25 a.m., the defendant entered the Circle K convenience store located at 762 Pierremont Road in Shreveport, Louisiana. He was armed with a weapon described as a tire tool and his face was covered with a T-shirt. The defendant used the weapon to pry open the cash register and remove the money. Later that morning, at approximately 3:12 a.m., the defendant entered the Circle K convenience store located on Youree Drive in Shreveport. Armed with the same weapon, the defendant demanded that the clerk give him the money from the register. After the clerk complied, the defendant took the money and fled.
Shreveport Police Officer D.M. Poindexter was en route to the Youree Drive location in response to the robbery when he observed a white Chrysler Fifth Avenue vehicle traveling at a high rate of speed. Officer Poindexter noticed that the driver of the vehicle fit the description of the robbery suspect. He pursued the vehicle with his lights and sirens activated; however, the suspect fled and a chase ensued. The chase ended when the suspect drove onto a dead-end street, left the vehicle on foot and fled into a nearby wooded area. A subsequent search revealed that the vehicle was registered to Carrie F. West, also known as Carrie Ouzts, the defendant's wife. The weapon used in the robberies and some of the money were also discovered in the vehicle.
Law enforcement officers went to the defendant's residence and encountered the defendant and his wife. Mrs. Ouzts stated that the defendant left with the family vehicle at approximately 2:00 a.m. and returned several hours later without the vehicle. After speaking with Mrs. Ouzts, the officers requested to speak to the defendant. The defendant appeared covered with scratches as if he had been running through brush. The defendant was taken to the police station for further questioning. After he was advised of his Miranda rights, the defendant gave a videotaped interview wherein he confessed to both robberies.
Prior to trial, the defendant filed a pro se motion to suppress. The trial court denied the defendant's motion. A jury subsequently found the defendant guilty on both counts of armed robbery. The defendant filed a motion for a post-verdict judgment of acquittal, alleging that the evidence was insufficient to support his conviction. The trial court denied the defendant's motion. Thereafter, the defendant was adjudicated a third-felony offender and sentenced to serve life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence on count one and fifty years at hard labor without parole, probation or suspension of sentence on count two. The sentences were ordered to be served concurrently. The defendant appeals.

DISCUSSION

Assignment of Error No. 1
The defendant contends the trial court erred in denying his motion to suppress his confession. The defendant argues that at the time he made the statements to the officers, he was not mentally stable because he was chemically impaired.
*1288 The state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of a confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Henderson, 31,986 (La.App.2d Cir.8/18/99) 740 So.2d 240. A trial court's findings following a hearing on the voluntariness of a confession are entitled to great weight and will not be disturbed unless unsupported by the evidence. State v. Morvant, 384 So.2d 765 (La.1980); State v. Henderson, supra. The testimony of the interviewing officer alone may be sufficient to prove that the statement was given freely and voluntarily. Police testimony may overcome a defendant's claim that his statement was involuntary because he suffered from an injury or lack of sleep. State v. Henderson, supra.
Whether intoxication, including drug use, exists and whether it is of a degree sufficient to vitiate the voluntariness of a confession are questions of fact. State v. Benoit, 440 So.2d 129 (La.1983); State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992). When the free and voluntary nature of a confession is challenged on the ground of mental incompetence due to intoxication, the confession is inadmissible only when the intoxication is of such a degree as to negate the defendant's comprehension and render him unconscious of the consequences of what he is saying. The trial court's conclusion on this factual issue will not be disturbed unless unsupported by the evidence. State v. Meredith, 400 So.2d 580 (La.1981); State v. Dailey, supra.
LSA-C.Cr.P. art. 703(G) governs the use of a confession at trial after a decision on a motion to suppress that is adverse to the defendant. The article provides:
When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of a confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
At the hearing on the motion to suppress, and later, at trial, Shreveport Police Detectives Ron Johnson and Ron Jeter testified as to the voluntariness of the defendant's confession. Detective Johnson testified that when he advised the defendant of his Miranda rights and asked the defendant if he was under the influence of drugs or alcohol, the defendant replied that he was not. Detective Johnson further testified that the defendant did not exhibit behavior consistent with a person who was under the influence of drugs or alcohol. According to Detective Johnson, "[T]he defendant's eyes looked fine, he walked fine, his speech was clear and he did not have an odor of alcoholic beverages." Detective Johnson testified that the defendant's statement was taken only after the defendant was advised of his Miranda rights and Johnson had verified that the defendant was not under the influence of drugs or alcohol.
Detective Jeter confirmed that Detective Johnson read the defendant his Miranda rights prior to the defendant's statement and Jeter watched defendant sign the Miranda rights card. He stated that the defendant was not coerced in any way and the defendant indicated that he was not under the influence of drugs or alcohol at the time he made his statement. Detective Jeter further testified that the defendant did not exhibit any signs to suggest he was under the influence of alcohol or drugs.
The defendant testified at the hearing on the motion to suppress that he had smoked crack cocaine two to three hours before his arrest. He also testified that, by the time the police officers arrived at his residence, his "high" was over. The defendant urged that his "thinking process was not stable" at the time he gave the confession because he had been strung out for several months. According to the defendant, *1289 he had been led to believe that his statement would help him. The defendant also stated that it would have taken him several weeks to clear his system of the effects of the cocaine, not just a few hours. The defendant further claimed that his "cognitive ability is eroded by the chemical over a period of use, and it takes days ... days of abstinence for that to repair itself." On cross examination, the defendant admitted that he understood his Miranda rights. He also admitted that he was not "intoxicated, `per se'," when he gave the statement.
After reviewing the record, we find that there was ample evidence presented to support the trial court's conclusion that the state met its burden of proving beyond a reasonable doubt that the defendant was not under the influence of drugs or alcohol, and his confession was knowingly made after waiving his Miranda rights. There is nothing in this record to support the defendant's contention that his confession was not given freely or voluntarily. Therefore, the district court did not err in admitting the confession into evidence. This assignment of error is without merit.

Assignment of Error No. 2
By his second assignment of error, the defendant contends the evidence at the habitual offender hearing was insufficient to support a finding that the defendant was a third-felony offender pursuant to LSA-R.S. 15:529. The defendant argues that the minutes of the prior proceedings failed to prove sufficiently that he was advised of his Boykin rights. According to the defendant, because he pled not guilty, the state was required to present a "perfect transcript" from each hearing. The state argues that the defendant did not make an affirmative showing that he was denied his rights and, therefore, it was not required to produce perfect transcripts.
In State v. Ignot, 29,745 (La.App.2d Cir.9/24/97), 701 So.2d 1001, this court stated the burden of proof in habitual offender proceedings:
If the defendant in a habitual offender proceeding denies the allegations, the state bears the burden of proving the existence of prior guilty pleas and that the defendant was represented by counsel. If the state meets that burden, the defendant has the burden of producing affirmative evidence showing an infringement of his rights or a procedural irregularity. If the defense is able to meet its burden, the burden of proving the constitutionality of the plea shifts to the state, and the state will meet its burden if it introduces a `perfect transcript' of the guilty plea. If the state produces anything less, the trial judge must weigh the evidence submitted by the defendant and the state to determine whether the state met its burden of proving the guilty plea was informed and voluntary, and was made with an articulated waiver of the Boykin rights respecting trial by jury, confrontation of accusers and the privilege against self-incrimination.
The state called an expert witness who identified the defendant's fingerprints as fingerprints from the same person who was convicted of armed robbery in 1981 and attempted possession of a controlled dangerous substance by fraud in 1989. The "pen pack," and its accompanying photographs, also pertain to the defendant. The state also offered certified copies of the court minutes of both guilty pleas. The trial court properly admitted these documents into evidence.
The evidence of record reflects that the defendant was advised of his Boykin rights at the prior guilty pleas. He was represented by counsel at both plea hearings. The defendant has failed to affirmatively show an infringement of his rights or a procedural irregularity at the two prior guilty pleas. Therefore, the state was not required to produce "perfect transcripts" of those plea hearings. The district court properly adjudged the defendant a third-felony *1290 offender. This assignment of error lacks merit.

Error Patent
We have reviewed the record for errors patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.