683 So.2d 1272 (1996)
STATE of Louisiana, Appellee,
v.
Randy Glenn THOMAS, Appellant.
No. 28790-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
*1274 Indigent Defender Office by Allan R. Harris and Richard E. Hiller, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Hugo A. Holland and Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before MARVIN, C.J., and BROWN and GASKINS, JJ.
GASKINS, Judge.
The defendant, Randy Glenn Thomas, pled guilty, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), to one count of first degree murder and one count of second degree murder. The trial court sentenced the defendant to serve two concurrent terms of imprisonment for life without benefit of parole, probation or suspension of sentence. The defendant appealed, urging 11 assignments of error. For the reasons set forth below, the convictions and sentences are affirmed.

FACTS
In early June 1994, three Shreveport menthe defendant, Antonio M. Jackson, and Joseph Lee Jacksondecided to rob Burford's grocery store in Keithville. The defendant, armed with a .22 caliber handgun, drove the men to the store in the early morning hours of June 10. At least one of the other men was armed with a large caliber revolver. The defendant entered the store first; he was followed by both Jacksons.
David Lacobee and his son Glenn were opening the store as the men came inside. David Lacobee drew his .357 revolver and fired at the defendant, striking him once in the abdomen. The defendant then shot David Lacobee twice, fatally wounding him, before running out of the store. Shortly thereafter, one of the Jacksons shot Glenn Lacobee, killing him instantly. Joseph Jackson stole approximately $400 in change from the store's safe.
When the Jacksons left the store, they discovered that the defendant had already fled in his vehicle. The two men ran across Mansfield Road where they hitched a ride to a bus stop and later caught a bus to their home. An anonymous tip led the police to the men about two weeks later; all three men eventually confessed to the crimes.
All three men were indicted on two counts of first degree murder. In exchange for the state's promise not to seek the death penalty, the defendant pled guilty to one count of first degree murder in the death of David Lacobee and one count of second degree *1275 murder in the death of Glenn Lacobee. However, he reserved his right to appeal the denial of his pretrial motions under State v. Crosby, supra. The trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence on each count and ordered that the sentences be served concurrently.
The defendant appealed. Although he originally asserted 11 assignments of error, Assignment of Error 5 was expressly abandoned in brief. Also, Assignment of Error 11, which was neither briefed nor argued, is deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La. 1990).

MOTION TO QUASH INDICTMENT
Initially, the defendant was charged by indictment for the first degree murder of both David and Glenn Lacobee. Count 2 of the indictment, pertaining to Glenn Lacobee, read as follows:
[The grand jury charges the defendant with first degree murder in that he] killed Glenn Lacobee, and was a principal to said killing, at a time when he had the specific intent to kill and inflict great bodily harm upon him and at a time when he was engaged in the perpetration and attempted perpetration of an armed robbery.
The defendant filed a motion to quash the indictment on two grounds: (1) there was no evidence to support the allegation in Count 2 that he had the specific intent to kill or commit great bodily harm upon Glenn Lacobee; and (2) the grand jury which indicted the defendant was improperly constituted. The trial court denied the motion. In his first assignment of error, the defendant contends that this ruling was erroneous.

Specific Intent
The defendant contends that the indictment for the first degree murder of Glenn Lacobee should be quashed because the evidence at the preliminary hearing proved that the defendant had already fled the crime scene when Glenn Lacobee was murdered. This charge was reduced pursuant to a plea agreement to second degree murder. Any defects in the indictment should thereby have been corrected since second degree murder encompasses the situation where a victim is killed during an armed robbery and no specific intent to kill or inflict great bodily harm need be proven. However, out of an abundance of caution, we will address this assigned error.
The motion to quash is essentially a mechanism by which to raise pre-trial pleas of defense, i.e., those matters which do not go to the merits of the charge. La.C.Cr.P. art. 531-534; State v. Perez, 464 So.2d 737 (La. 1985). In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. State v. Perez, supra.
Clearly, the indictment charges a valid offense. The defendant's motion challenged the sufficiency of the evidencea "question of factual guilt or innocence of the offense" not properly raised by a motion to quash. Furthermore, as mentioned above, the defendant subsequently rendered this claim moot by his guilty plea.[1] A guilty plea by its nature admits factual guilt and relieves the state of the necessity of proving it by a contested trial. State v. Buggs, 567 So.2d 744 (La.App. 2d Cir.1990). Here, the defendant entered a guilty plea whereby he admitted his guilt to second degree murder in Glenn Lacobee's death.
This portion of the assignment of error is without merit.

*1276 Grand Jury Composition

The defendant's second argument in his motion to quash challenged the composition of the Caddo Parish grand jury. Specifically, the defendant argued that the grand jury indictment was invalid because young adults, age 18 to 30, including young black males the same age as the 21-year-old defendant, were systematically excluded from the venire because they "traditionally do not register to vote" and the venire is made up only of registered voters. The defendant alleged that his equal protection rights were violated by this alleged exclusion of young people because "[s]cientific studies, which will be offered in support of this motion, show that a substantially smaller percentage of the persons under 30 years of age favor capital punishment as to people over 30."
The trial court denied the defendant's motion to quash on this ground as well. The court indicated in its opinion that the use of voter rolls as the sole source of potential jurors in Caddo Parish has twice been approved by this court. See State v. Davis, 626 So.2d 800 (La.App. 2d Cir.1993), writ denied, 93-2945 (La.2/25/94), 632 So.2d 762, and State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992). See also State v. Brogdon, 426 So.2d 158 (La.1983), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). Further, the court held that the defendant failed to show that young adults are a cognizable group subject to discrimination by the use of voter rolls to select jurors.
A motion to quash the venire will not be granted unless there is fraud in the selection, some great wrong has been committed which will work an irreparable injury to the defendant, or there is a systematic exclusion of otherwise qualified persons solely on the basis of race. La.C.Cr.P. art. 419(A); State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).
In the defendant's "Memorandum in Support of Defendant's Motion to Quash Indictment" filed in the trial court, the defendant indicated that a hearing on this matter was held on January 20, 1995. However, that hearing was not transcribed in the record nor was it requested by the defendant in his designations for appeal. A party moving for appeal must request that portion of the proceedings necessary for review in light of the assignments of error to be urged. Only that which is in the record may be reviewed. See La.C.Cr.P. art. 914.1; State v. Elliott, 467 So.2d 1144 (La.App. 2d Cir.1985); State v. Vampran, 491 So.2d 1356 (La.App. 1st Cir. 1986), writ denied, 496 So.2d 347 (La.1986).
Since the defendant failed to perfect this assignment of error for appellate review by designating the portions of the proceeding necessary for review, this assignment of error is without merit.

MOTIONS TO SUPPRESS
In Assignments of Error 2, 3 and 4, the defendant complains of the trial court's denial of his motions to suppress. The defendant filed several such motions, including a motion to suppress the confession he made to police on the grounds that the statement was made while he was illegally detained, a violation of his Fourth and Fourteenth Amendment rights to be secure in his person from unreasonable seizure. In the defendant's pro-se motion, he argued that he was under the influence of marijuana and P.C.P. at the time he made the statement. An exhaustive hearing was held on the motions on behalf of all three defendants in this matter. Ultimately, the court ruled that the defendant had not been illegally detained and, therefore, his inculpatory statement was admissible. The defendant sought a writ from this court on the issue; the writ was denied with reservation of the issue for appeal in the event of conviction.
On appeal, the defendant complains that the trial court erred in finding that the custodial circumstances surrounding his statement were lawful. He argues that he was unlawfully interrogated in violation of the rule of Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and that his statement should be "declared inadmissible" by this court. The state argues that the evidence adduced at the hearing supported the trial court's conclusion and that this conclusion should not be disturbed on appeal.
*1277 The events surrounding the confessions are as follows. About two weeks after the murder, an anonymous caller told police that a man named Nathaniel "Monkey Man" Robinson had seen Antonio and Joseph Jackson on a road near the crime scene at the time of the offenses. Police questioned Mr. Robinson, an area resident, who said that he had driven the two men to a convenience store on Highway 171 next to a bus stop. Mr. Robinson knew the men because they used to live near him. Robinson told police that the Jacksons were nervous and sweaty and that Antonio Jackson smelled of gunpowder.
Police learned that Antonio Jackson's mother, Martha Ann Jackson, worked at LSU Medical Center and contacted her the next day. Ms. Jackson told police that Antonio and Joseph Jackson, as well as "Randy Smith," lived with her. Police requested and obtained permission to visit her home that evening and speak to the men about the Keithville murders. They first became aware of the defendant during this conversation when Ms. Jackson informed them that he also lived at her home. No evidence existed linking the defendant to the crime at that time.
Four officerstwo each in a carcame to the Jackson home after nine p.m. They were Caddo Parish Sheriff's Office Investigators Greg Hall, Mike Christian, Charles Sholz and David Hensley. The three defendants arrived at the residence shortly after the officers arrived. Investigator Hall then spoke to the men. He testified:
I told them their names had come up in something real serious and I needed to talk with them at my office, and I told them that I couldn't make them come with me and if they wanted to come, it would be strictly voluntarily.
Investigator Hall testified that he did not tell the men that they were under arrest nor did he tell them they had to accompany him. Hall said that Joseph Jackson said "that he wanted to come because he wanted to find out what all this was about." Hall testified that the others "basically said that they wanted to go." He admitted that the only way that the defendant's name had come up in the investigation was his residence in the Jacksons' home.
The investigator said that he probably offered the group a ride to the police station. The defendant and LaTonya Jackson, Antonio's sister, rode in one police car while Joseph and Antonio Jackson rode in the other. None of these persons were handcuffed. The police vehicles were unmarked and did not have cages or secure rear doors.
When they arrived at the police station, each interviewee was taken to a separate room. Officers either remained in the room with each individual or periodically visited with them to see if they needed anything. The defendant was at times left alone. Officers testified that he was never deprived of the use of bathroom facilities or water, nor was he told that he would receive any benefit from making a statement. Investigator Sholz testified that he was familiar with the appearance of persons under the influence of drugs or alcohol and that the defendant was not under the influence of either. Investigator Christian corroborated this testimony.
While at the station, the defendant was never told that he was under arrest or forbidden to leave. The defendant stayed at the station conference room for approximately four hours before police interviewed him. (The first interviews were with LaTonya Jackson and Antonio Jackson; of the four, Joseph Jackson was the last person interviewed.)
Officers conducted a brief untaped pre-interview with the defendant and then read him his Miranda rights, which he waived, and asked him whether he had been injured. The defendant said that he had been shot in a drive-by shooting. Investigators Sholz and Christian testified that his injury did not appear to need immediate medical attention. The defendant then made an inculpatory statement. He was arrested after he made this statement.
In Dunaway v. New York, supra, the Supreme Court reversed the conviction of a man who had confessed to a robbery-murder in New York. Police learned from an informant that the defendant might have been involved in the crime but did not have *1278 "enough information to get a warrant" for the defendant's arrest. 442 U.S. at 203, 99 S.Ct. at 2251. Nevertheless, police detained the defendant, took him into police headquarters in a marked police car and forbade him from leaving. Dunaway then waived his Miranda rights and made an inculpatory statement. A lower court found that the defendant had not voluntarily appeared at the police station to make a statement; however, New York's highest court affirmed the defendant's conviction. The United States Supreme Court reversed, holding that this procedure was in violation of the defendant's Fourth Amendment rights against seizure on less than probable cause.
In State v. Thibodeaux, 414 So.2d 366, 368 (La.1982), the Louisiana Supreme Court discussed what constitutes an illegal detention:
Whether a person has been taken into custody, detained or deprived of his freedom in a significant way must be decided by an objective test. State v. Liner, 397 So.2d 506 (La.1981); State v. Menne, 380 So.2d 14 (La.1980). Neither the defendant's subjective impression nor the formality of an official arrest will be determinative of the issue of his claimed illegal detention. State v. Menne, supra. Rather, all of the circumstances surrounding the defendant's transportation to the stationhouse and questioning should be evaluated.
The state bears the burden of proving that the statement was voluntarily made. La. R.S. 15:451. The admissibility of a confession is a question for the trial judge, and his conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless not supported by the evidence. State v. Dailey, 607 So.2d 904 (La.App. 2d Cir.1992).
As the trial court recognized, the totality of the evidence in the instant case makes it readily distinguishable from the Dunaway case. From the outset, the defendant and the Jacksons were told that they were not under arrest and could choose not to accompany the officers to the station. Indeed, it appears that they wanted to "find out what this was about" and went with the investigators voluntarily. Once at the station, they were again not prohibited from leaving; no officer formally guarded them.
Nothing in the record contradicts the trial court's findings. The hearing on the motion to suppress was exhaustively thorough, covering every contention of the defendant that the statement should not be admitted. All of the testimony supports the finding that the defendant voluntarily accompanied officers and voluntarily made the inculpatory statement. Moreover, the investigators in this case did not engage in the heavy-handed techniques forbidden in the Dunaway case.
These assignments of error are without merit.

REMAINING ASSIGNMENTS OF ERROR
The defendant's remaining assignments of error address a variety of pretrial motions, including a motion to sever. While a plea of guilty generally waives all non-jurisdictional defects in the pre-plea proceedings, a defendant may condition his plea, subject to acceptance by the trial court, upon the reservation for appellate review of specified pre-plea errors. State v. Chrisman, 364 So.2d 906 (La.1978); State v. Aguillard, 357 So.2d 535 (La.1978); State v. Crosby, supra. The function of a Crosby plea is to permit a fair and efficient review of a central issue when the pre-plea ruling, if erroneous, would mandate reversal of any resulting conviction. The typical pre-plea ruling subject to a Crosby reservation is a motion to suppress inadmissible evidence illegally or unconstitutionally obtained which would mandate reversal of any conviction, in spite of the guilt or innocence of the accused. State v. Burns, 602 So.2d 191 (La.App. 3d Cir.1992). On prior occasion, this court has also considered and reversed the denial of a motion to quash after a Crosby plea. See State v. Malone, 610 So.2d 148 (La.App. 2d Cir.1992).
The Crosby plea was not intended to provide appellate review of pre-plea rulings concerning procedural irregularities or evidentiary rulings which do not go to the heart of the prosecution's case, or do not substantially relate to guilt. Given as an example of *1279 a pre-trial procedural irregularity in the Crosby case was a denial of a motion for continuance or motion to sever. State v. Crosby, supra at 591; State v. Burns, supra. If considered on review, it will be assumed that they represent harmless error unless the record clearly shows otherwise. State v. Crosby, supra at 591.
In the present case, when the defendant entered his Crosby plea, he did so with the reservation as to "pretrial motions including specifically the judge's denial of the defendant's motion to suppress statements." Although the following assignments of error were not specifically reserved at the guilty plea and are primarily of the nature of procedural irregularities, we consider them out of an abundance of caution.

Motion to Sever
The defendant contends that the trial court erred in denying his motion to sever the two murder charges against him for separate trials. He argues that the evidence on the two counts would confuse the jury, which would most likely use evidence of one count to convict him on the other.
A defendant bears a heavy burden when alleging prejudicial joinder of offenses as grounds for a motion to sever. Factual rather than conclusory allegations are required. State v. George, 26867 (La.App.2d Cir. 4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855.
The defendant has failed to specify how the denial of the motion to sever prejudiced him in light of his guilty plea. The two first degree murder charges were based on the same transaction and, since they were the same charge, were triable by the same mode of trial. La.C.Cr.P. art. 493. He has not asserted that he would not have pled guilty but for the denial of this motion nor is there any such suggestion. Because defendant has not shown how he was prejudiced by the denial of this motion even if that denial was in error, we find that this assignment of error is without merit.

Motion to Dismiss Counsel
The defendant also contends that the trial court erred in denying his motion to dismiss his court-appointed counsel.
On January 8, 1996, defendant filed a pro-se motion to dismiss his attorneys Allen Harris and Alan Golden. He complained that his attorneys "continuously [harassed] and hounded" him to accept the plea bargain and that this pressure made it difficult for him to communicate with the attorneys. The defendant argued this motion to the court. He said:
For the last past couple of days, I have had some problems with my attorney and we are not, you know, communicating right. And he went even so far as to call me stupid and saidhe told me I would be stupid if I didn't take this plea offer that he had. So I would like to have him dismissed from my case.
The court responded:
Okay. Your motion is denied. Just because you disagree with the advice of legal counsel, especially as you have the Indigent Defender office, is no basis to have counsel dismissed. At this stage, Mr. Harris represents you, the Office represents you. He advises you as to what he thinks is in your best interest and you have the right to either accept or reject that advice. Apparently you have rejected that advice, according to your own testimony. But that is up to you. He is going to represent you; he's going to do the best he possibly can for you. And he has been arguing the cases this morning for you on that. So your motion is denied.
In State v. Harper, 381 So.2d 468, 470 (La.1980), the supreme court said:
As a general proposition a person accused in a criminal trial has the right to counsel of his choice. State v. Leggett, 363 So.2d 434 (La.1978); State v. Mackie, 352 So.2d 1297 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). If a defendant is indigent he has the right to court appointed counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, [407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)]; *1280 State v. Adams, 369 So.2d 1327 (La.1979); City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). An indigent defendant does not have the right to have a particular attorney appointed to represent him. State v. Rideau, 278 So.2d 100 (La.1973). An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Jones, 376 So.2d 125 (La.1979); State v. Leggett, supra; State v. Mackie, supra.

The court cannot be called upon to appoint other counsel than the one originally appointed merely to please the desires of the indigent accused, in the absence of an adequate showing that the court appointed attorney is inept or incompetent to represent the accused. State v. O'Neal, 501 So.2d 920 (La. App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987).
The underlying reason for the defendant's motion to dismiss counsel was their strong recommendation that he accept the plea bargain in order to escape a possible death sentence. The defendant did not allege that his counsel was ineffective, nor would this argument have been successful in light of the well argued motions zealously urged by defense counsel. The defendant did not allege that his counsel had any conflict of interest in his representation or had refused to take some requested action. The defendant simply argued that he needed new counsel because he disagreed with the advice given by his current attorneys.
Such grounds are insufficient to merit the dismissal of counsel in light of Harper, supra. In this case, the evidence was overwhelming that the defendant shot and killed David Lacobee in the course of an armed robbery. The prosecution had charged the defendant with first degree murder and taken the proper procedural steps to literally place the defendant's life in the hands of a jury. While no verdict is certain, the defendant's own motions cite the respect that the Lacobees were afforded in their professional lives as firefighters. Such factors may bear heavily upon a jury's decision to impose the death penalty, and competent counsel must consider all circumstances in recommending a course of defense. Furthermore, we note that when the defendant entered his guilty plea, he specifically denied that he had been threatened or coerced in any way and asserted that it was his own decision to plead guilty.
This assignment of error has no merit.

Motion Pertaining to Docket Order
By this assignment of error, the defendant urges that the trial court erred by permitting the District Attorney to set his case for trial before the trial of Antonio Jackson when the state had previously said that Antonio Jackson's trial would be conducted first. When defense counsel learned on January 8, 1996, that the state planned to try him first, he objected to the change in plan and filed a "Motion to Compel Adherence By District Attorney to Previously Set Docket Order." This motion was denied. In so ruling, the court noted that the trials were set for January 22, 1996, two weeks in the future, and that amount of time did not call into question the fundamental fairness of the state's election of the order of trial.
State v. Ray, 474 So.2d 954 (La.1985), cited by the defendant as a limitation on the order of trial of criminal cases, is a writ grant wherein a district attorney was merely directed to set an order of trial by the Friday before a Monday trial setting. In State v. Simpson, 551 So.2d 1303 (La.1989), the supreme court stated that, since adequate notice is a fundamental element of due process, the criminal docket for a particular day must indicate the order in which cases are to be called for trial, and the district attorney's power under local court rules to call criminal cases for trial "in any order preferred by him" could not be interpreted to grant that authority on the day of trial.
In the instant case, the purported change in the order of trial came approximately two weeks before the case was set to be tried. Moreover, the state's initial proposed order of trial was based on its understanding at *1281 that time that the defendant intended to plead guilty. Only when that plan was upset did the state change the proposed order for trial. The defendant has shown nothing which indicates that the trial court erred in ruling that the district attorney could set the defendant's trial first on a date two weeks in advance. Particularly because the defendant pled guilty to these offenses, he has shown no prejudice from the ruling even if it was erroneous.
This assignment of error is without merit.

Motions Pertaining to Jury Instructions and Victim Impact Statement
In Assignments of Error 9 and 10, the defendant contended that the trial court erred in denying his motion to quash use of jury instruction relative to the governor's pardon/commutation of death sentence and his motion to quash use of a victim impact statement. While these two assignments of error were reiterated in the defendant's original brief, they were not argued beyond a conclusionary statement that the trial court erred in ruling against the defendant on the motions.[2] Inasmuch as the defendant pled guilty in this case and these assignments pertain to events which therefore did not occur, the defendant has failed to show that he was prejudiced in any way.
These assignments of error are without merit.

ERROR PATENT
In advising the defendant of the penalty during the Boykin hearing, the trial judge told the defendant that:
the maximum exposure in this matter for first degree murder is life imprisonment without benefit of parole, probation, and suspension of sentence; and the charge for second degree murder is life imprisonment without benefit of parole, probation, or suspension of sentence[.] [Emphasis added.]
Life imprisonment without benefit is the mandatory, not the maximum, sentence for second degree murder. Although life imprisonment without benefit is the lesser of the two possible penalties for first degree murder, once the state agreed not to seek the death penalty against the defendant, it became the only available penalty. In the instant case, there is no doubt that the defendant fully understood that he would receive the two concurrent life sentences because that portion of the plea bargain was read aloud at the beginning of the hearing and was agreed to by defense counsel. Therefore, we find that the trial court's misstatement was harmless error.
Our review of the record revealed no other errors patent.

CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] In the instant case, the defendant did not enter a guilty plea under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), whereby a defendant pleads guilty while nonetheless asserting a claim of innocence.
[2] Our review of the record reveals no ruling on the motion concerning the victim impact statement. As to the motion pertaining to the governor's pardon/commutation powers, the trial court merely observed that it was premature and deferred ruling upon it until such time as it became relevant.