11 GASKINS, J.
■ The defendant, John A. Thomas, Jr., was convicted as charged of second degree murder and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. We affirm the defendant’s conviction and sentence.
FACTS
On March 19, 2002, the defendant visited his former girlfriend, Corney Pierce, at her workplace, Jewella Food Mart. Her employer, Mohammed Yousef, told the defendant that she was not allowed to talk to him during work hours. Ms. Pierce testified that the defendant then shot Mr. You-sef twice. One shot struck the victim in the chest; a second shot was fired into the back of the victim’s neck. The shot to the back of the neck was described by the coroner as being the “fatal shot.” Turning to Ms. Pierce, the defendant called her a “bitch” and shot at her. She fled out the store’s back door. Mack Smalley, another employee, was in the store at the time of the shooting. He testified that he did not see the shooter before ducking; however, he heard several shots, including three shots that were fired in his direction. Sev *1169 eral minutes later, Ms. Pierce returned to the store and called the police. She identified the defendant from a photo line-up.
The defendant was arrested on March 27, 2002, at a house where he had been hiding. As officers waited for the defendant to come out of the house, dark smoke began “billowing from the back side of the house.” The defendant finally surrendered. A Fratelli Tanfoglio 9mm pistol was found just inside the front doorway of the house; the state’s expert in firearms and lütoolmark identification testified that 14 spent shell casings found at the murder scene were fired from that gun.
Handwritten notes in the form of a diary were found in the defendant’s back pocket. The notes were entries dated beginning March 24, 2002, and included plans or fantasies about murdering Ms. Pierce “at work or home.”
The defendant was originally charged with first degree murder. The state later reduced the charge to second degree murder. The defendant was comdcted as charged on May 28, 2004. His motion for modification of the verdict to manslaughter was denied, and he was sentenced to life imprisonment at hard labor without benefits.
The defendant appealed.
SUFFICIENCY OF EVIDENCE

Arguments

The defense argues that Ms. Pierce’s testimony was not credible, that the responsive verdict of manslaughter was more appropriate in this case because the defendant may have acted in sudden passion or heat of blood, that the defendant’s handwritten notes admitted into evidence were irrelevant, and that no armed robbery was committed “during the course of these events.”
The state argues that it proved the defendant killed the victim when the defendant had a specific intent to kill. or to inflict great bodily harm. According to the state, Ms. Pierce was a credible eyewitness who heard the first gunshot and then “looked up” and saw the defendant shoot the victim. NThe state further notes that the police found the murder weapon when they arrested the defendant. The state claims the defendant’s intent to kill was also evidenced by his conduct immediately after killing the victim in that he shot at Ms. Pierce as she fled and fired at least three shots at Mr. Smalley. For those reasons, the state argues that a reasonable jury, after viewing this evidence in the light most favorable to the prosecution, could conclude the defendant was guilty of second degree murder.

Law

Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, *1170 2002-3090 (La.11/14/03), 858 So.2d 422. An appellate |4court does not assess the credibility of witnesses or reweigh evidence. State v. Mitchell, 39,202 (La.App. 2d Cir.12/15/04), 889 So.2d 1257.
Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Ellis, 28,282 (La.App. 2d Cir.6/26/96), 677 So.2d 617, unit denied, 96-1991 (La.2/21/97), 688 So.2d 521. As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Murray, supra. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Mitchell, supra.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Brooks, 36,855 (La.App. 2d Cir.3/05/03), 839 So.2d 1075, writ denied, 2003-0974 (La.11/07/03), 857 So.2d 517; State v. Dooley, 38,763 (La.App. 2d Cir.9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30.
A homicide which would otherwise be second degree murder is manslaughter when it is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person 1 sof his self-control and cool reflection. La. R.S. 14:31. “Sudden passion” or “heat of blood” are not elements of the crime of manslaughter, but are mitigating factors in the nature of a defense which exhibit a degree of culpability less than that present when a homicide is committed without them. State v. Fields, 38,496 (La.App. 2d Cir.6/23/04), 877 So.2d 202, writ denied, 2004-1865 (La.11/24/04), 888 So.2d 229.
A defendant is required to prove by a preponderance of the evidence that he acted in “sudden passion” or “heat of blood” for a verdict of manslaughter to be appropriate. State v. Robinson, 32,794 (La.App. 2d Cir.3/01/00), 754 So.2d 311, writ denied, 2000-0989 (La.3/23/01), 787 So.2d 1008. In reviewing a defendant’s claim that he has met that burden, the appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigating factors had not been established by a preponderance of the evidence. State v. Robinson, supra; State v. Lewis, 28,973 (La.App. 2d Cir.12/11/96), 685 So.2d 1130, writ denied, 97-0122 (La.5/16/97), 693 So.2d 797.

Discussion

Ms. Pierce, whose testimony was found to be credible by the jury, stated that prior to the shooting, the defendant asked if they were going to get back together; she said no. After telling him, “Well, I guess I have to get back to work,” she then returned to the meat counter. Although she did not see the first shot, she looked up immediately after hearing it and saw the 1 (¡defendant shoot the victim. She testified that the. defendant then turned the gun toward her and fired.
The victim was shot twice — once in the upper right chest and once in the back of the neck. The shot to the back of the neck was described at trial by the coroner as “a fatal shot.” The coroner opined that the *1171 chest wound was first, followed by the neck wound, because of the damage inflicted by each shot and the positioning of the body.
The circumstances of the shooting and the actions of the defendant reveal that he had specific intent to kill or inflict great bodily harm. He shot the victim twice from a relatively close range. He continued firing at Ms. Pierce and Mr. Smalley after the victim had been fatally injured. The police collected 14 spent shell casings from the crime scene. The jury determined that the defendant had the specific intent required to prove second degree murder, and the evidence supports that finding.
The handwritten notes seized at the time of the defendant’s arrest are dated almost a week after the shooting. In them, the defendant refers to killing, mutilating or otherwise harming Ms. Pierce and persons close to her. While not direct evidence of the defendant’s specific intent at the time of the murder, they were relevant as circumstantial evidence suggesting the defendant’s willingness to kill or seriously injure Ms. Pierce and the people she worked or lived with.
Although the defendant argues that he acted in sudden passion or heat of blood because of the “stress of an ended pregnancy and Ms. Pierce’s unwillingness to reconcile,” he has not proven by a preponderance of the |7evidence the presence of mitigatory factors which would entitle him to the responsive verdict of manslaughter. Ms. Pierce testified that the conversation immediately preceding the shooting did not concern the pregnancy. Her refusal to reconcile with an ex-boyfriend does not suggest the type of provocation necessary for “sudden passion or heat of blood” as described in La. R.S. 14:31.
Felony homicide was not argued by the state; therefore, it was not required to show that an armed robbery was in progress at the time of the shooting. Instead, the state argued — and the evidence showed — that the defendant had specific intent to kill or inflict great bodily injury as required by La. R.S. 14:30.1(A)(1).
, This assignment is without merit. '
PRETRIAL PRO SE MOTIONS
In this assignment of error, the defense argues that the trial court erred in not ruling on the defendant’s pretrial pro se motions to have his court-appointed indigent defender replaced. In these motions, the defendant raised a myriad of complaints against counsel including that he was overburdened, that he was not representing the defendant’s interests, that he failed to contact witnesses suggested by the defendant, that he was assisting the prosecution to secure the defendant’s conviction, and that he participated in an assault upon the defendant.

Law

In State v. Harper, 381 So.2d 468, 470 (La.1980), the supreme court said that as a general proposition, a person accused in a criminal trial has the|Rright to counsel of his choice. An indigent defendant has the right to appointed counsel. La. C. Cr. P. arts. 511, 513. However, this right does not necessarily equate to counsel of defendant’s choice. State v. Zihlavsky, 33,467 (La.App. 2d Cir.6/21/00), 764 So.2d 250, writ denied, State ex rel. Zihlavsky v. State, 2000-2434 (La.5/25/01), 792 So.2d 756; State v. Thomas, 28,790 (La.App. 2d Cir.10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La.4/25/97), 692 So.2d 1081. This court has stated that the trial court cannot be called upon to appoint other counsel than the one originally appointed merely to please the desires of the indigent accused, in the absence of an ade *1172 quate showing that the court-appointed attorney is inept or incompetent to represent the accused. State v. Thomas, supra; State v. O’Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987). When a defendant permits trial to proceed without raising the issue of lack of ruling on motions, then he has waived claims that the trial court erred in failing to rule oil pro se motions. State v. Gaddis, 36,661 (La.App. 2d Cir.3/14/03), 839 So.2d 1258, writ denied, State v. ex rel. Gaddis v. State, 2003-1275 (La.5/14/04), 872 So.2d 519.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief-in the trial court instead of on appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2d Cir.6/21/00), 764 So.2d 1164. When the record is sufficient, this court may resolve this issue on direct appeal in the [ interest of judicial economy. State v. Willars, 27,394 (La. App. 2d Cir.9/27/95), 661 So.2d 673; State v. Smith, 25,841 (La.App. 2d Cir.2/23/94), 632 So.2d 887.
In order to reverse a conviction on the grounds of ineffective assistance of counsel, the defendant must show that counsel made errors so serious that the defense was prejudiced, such that the defendant was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The defendant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Discussion

The defendant’s numerous pretrial motions are actually a series of motions recycled at different dates. In those motions, the defendant argued that his counsel was ineffective because they had poor communication and apparent personality clashes. He requested appointment of private counsel. The motions were not ruled on, and a hearing was never held by the trial court. However, a trial court is not required to entertain motions filed by a defendant who is represented by counsel. State v. Outley, 629 So.2d 1243 (La.App. 2d Cir.1993), unit denied, 94-0410 (La.5/20/94), 637 So.2d 476. When a defendant permits trial to proceed without raising the lack of ruling on motions, then he has waived claims that trial court erred in failing to rule on pro se motions. State v. Gaddis, supra. Because the defendant failed tojjgprovoke a hearing before trial or at trial, he waived his claim to have new counsel appointed.
Since the defendant raises allegations of ineffective assistance of counsel in his pretrial motions, we will review defense counsel’s actions prior to trial. In this case, the evidence was overwhelming that the defendant shot and killed the victim. The defendant was originally charged with first degree murder. Prior to trial, the charge was reduced to second degree murder. The record shows that defense counsel filed numerous pretrial motions, including the following: a motion for discovery, a motion for bill of particulars, a supplemental motion for discovery and bill of particulars, a supplemental motion for appoint ment of sanity commission, a motion and order to obtain Department of Corrections records, a motion and order for the defendant’s military records, a motion to suppress, a motion in limine as to depiction of the decedent’s fatal wounds, and a motion in limine as to photographic evidence of *1173 autopsy and crime scene.[1] Defense counsel cross-examined witnesses at the hearing on the motion to suppress and at the hearing to decide whether the defendant would be seated in a wheelchair before the jury. He successfully argued in an eviden-tiary hearing that the coroner not be allowed to testify that there was an “execution shot.” The defendant failed to raise any discernable errors by defense counsel, much less articulate how he was deprived of a fair trial. Therefore, we find that | T1the record demonstrates that defense counsel’s performance before trial was competent and that his actions did not prejudice the defendant.
This assignment is without merit.
PRO SE APPELLATE BRIEF
The defendant sought permission to file a pro se brief. On January 11, 2005, this court granted the request and directed that the brief be filed within 30 days of the order. The brief was not received in this court until February 18, 2005, and was thus untimely. However, we note that in his lengthy brief, the defendant touches upon issues similar to those raised by appellate counsel and already considered by this court. In fact, his pro se supplemental arguments for his first and third errors are predominantly a reiteration of those made in pretrial pro se motions alleging ineffective assistance of counsel.[2] As previously discussed, the trial court did not err in its refusal to consider the pro se motions, and the defendant failed to prove that the trial court’s failure to act upon the pro se motions denied him of substantial rights.
These assignments of error are also without merit.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Although the pro se motions at issue here address pretrial matters, we note that at trial defense counsel cross-examined witnesses and was assisted by co-counsel. Although he waived the opening statement, he presented a closing argument. He objected to an improper statement made during the state's closing argument. Following the defendant's conviction, defense counsel filed a motion for modification of verdict, a motion for appeal, and a motion for designation of record on appeal.

. In his second pro se assignment of error, the defendant accuses the prosecutors of various acts of misconduct, including using irrelevant and prejudicial evidence to confuse the jury.